I would like to reserve three minutes for rebuttal. And I would also like to call judicial notice of the Ninth Circuit case Delia-Ramuth-Bona, which was decided by the Ninth Circuit on the basis of the Ninth Circuit decision, which I believe is right on point on what is the issue in this case. In the lower courts, both the BIA and the immigration judge, they ruled that the petitioner was not entitled to a just status because, as far as they were concerned, the petitioner was not entitled to a just status. And I would like to call judicial notice of the Ninth Circuit on the basis of the fact that there are two sections in the INA, 236A and 212D5. Under 212D5, the attorney general can parole arriving aliens. Under 236A, the attorney general can parole. And under 236B, the attorney general can parole, but it states specifically that there is a conditional parole allowed or, but it states but. And then it goes on to state other things on that they're not entitled to authorization of employment unless they're permanent residents or unless they are authorized to a just status. The thing at issue here is whether we can carve the parolee statute, which is under INA 245a, whether, which has been in effect since 1960, whether we can carve that out now and say conditional parole parolees, and this is taking the worst scenario, that our petitioner was only a conditional parolee, which we, which we do not agree with, but assuming what the government is alleging, that the petitioner was only a conditional parolee, therefore, he was not entitled to adjustment of status through his U.S. wife. We're stating that this would, in essence, make what has been traditional since 1960, the INA 245a, which states there are two classes of people who are allowed to adjust status. First, aliens who have been inspected and admitted, or parolees, period, parolees. Or who have been paroled into the United States. Now, in our case, and incidentally, I also want to call attention to the fact that there is a provision under 1255c or 245ac where it eliminates or restricts certain aliens that cannot adjust status, and it's very specific. It does not say anything about conditional parolees. Let me ask you this, if you don't mind my interrupting. The facts of the case here are that your client was intercepted, basically, sort of in process while he was being smuggled. Yes. He was incarcerated, and then he was allowed, or maybe even required, it's a little unclear what verb I should use, to stay in the United States pending the prosecution of the smuggler. He himself is not charged with smuggling. He is the smuggly, if you were. And rather than keep him incarcerated during the period while we're awaiting trial of the smuggler, he is given parole. And then at the conclusion of the trial, we have a removal proceeding, which is the ordinary proceeding which he would have been subjected to earlier had we not had this trial waiting. And you're arguing that the parole during this period is the equivalent of being paroled into the United States. Is this right? It's not quite exact on point, Your Honor, and let me clarify. First of all, there's three time periods. The first time period is when he was detained or picked up by immigration. He was an arriving alien placed into detention. That was on June 8, 2002. A few days later, his custody was redetermined. And from this point until August 28, 2002, he was paroled on his own recognizance because he was going to be a witness in the criminal prosecution of that smuggling situation. Correct. That's what I intended to say. He was one of the, there were about 14 people total. And after they considered that maybe they needed somebody to help, and he agreed to participate as a witness. At that point, they released him on his own recognizance, and they followed the procedure under 212 D-5, which was that they had to have an address of where he was going to be at. It's a litany of things that 212 D-5 requires before you are placed on parole. He also had a return at the end. During this time period, he adjusted, he filed a petition. During this period, he got married to an American citizen, and he sought to adjust status. So what you say is consistent with what I thought I said. And that is to say, you're wanting us to conclude that this parole is the equivalent of being paroled into the United States, which would then allow him to adjust status. And the people below said, no, paroled into the United States is a different phrase and a different meaning. This parole is a different kind of parole. That's the argument. Yes. And I say, call it what, the distinction they made, I think, is a play on words, into the United States was the reason that they said he didn't qualify because he was not paroled, quotation marks, into the United States. Right. But in essence, when you parole somebody and release them on their own recognizance, that is releasing him into the United States. Well, that's what that's what you're claiming. But it looks like he was released under 1226A capital B. Is that right? Which one? This is completely different when you deal with a 1226 apprehension, detention and conditional parole than paroled into the United States. Well, it's not the same process. Why do you say he wasn't paroled, conditionally paroled under this statute? Because of the reason of we're trying to draw a distinction based on into the United States. Whether that's the same thing. You're taking a word that has a precise meaning in one context and trying to use it in the general sense that people use the word into. Your Honor, first of all, I do want to state that there was an actual, and we quoted that the attorney general had made a memorandum stating that 236 is equivalent to, should be complementary to 212D5. This is a virtual memo that was submitted in the adjustment of status supplement by us in the lower court before the I.J. I don't understand what your recent case of Bona v. Gonzalez, a year and a half old case. It would be nice if we got these earlier. But fortunately, we have a diligent law clerk who seems to have dredged this up anyway and discussed it. But that case holds the 245.1c8, deals with that, and I don't see what that has to do with this case. This, your Honor, in that it says that in our case, the client was released without bond. Then after his period of being used for the public benefit of a witness in a criminal proceeding terminated, he was ordered to come back. He came back on August 28, 2002, and at that time, he was then placed on the regular, he had to place a regular bond. So the attorney general was differentiating between when he was on parole and when now he was back into the system, into the removal proceeding. So you're – what I hear you saying is 245.1c8 doesn't have anything to do with this case. Nobody relied on it. You're telling us it's no good and we held that a year and a half ago. I still don't see what it has to do with this case. Okay, your Honor. This specific, in that the government conceded, said even if, and in their argument they stated that, even if a SUCAR was applicable, well, they said that in their argument before this Court, even if a SUCAR, which was the First Circuit decision, was applicable, this case does not go into the issue of whether the 245 – they try to distinguish by saying that he did not have the right to a just status because he was a conditional parolee. In the case of Bona, which affirmed, the Ninth Circuit affirmed the SUCAR case, which stated that 245a has not been changed, little a, it's not 245a, big a. But if I can interrupt, my understanding is that neither the I.J. nor the BIA relied upon this regulation. That is to say, the regulation we invalidated, I understand that, but as I understand it, neither the I.J. nor the BIA thought that it was relevant to their decision. So they did is that they stated that 236a carved out a separate section for parolees, that conditional parolees were actually not included, that they were a separate section, and that a conditional parolee was not allowed to adjust status while he was in removal proceedings. And we're stating that even assuming that he was a conditional parolee, even assuming that 245a only has two classes of people, people that have been inspected and admitted, and secondly, parolees, it does not go on and carve out other additional people that can adjust status. Thank you, counsel. Your time has expired. We'll hear from the other side. Good morning. May it please the Court. Arthur Rabin for the Attorney General. To the contrary, the issue in this case has nothing to do with the board's or the immigration judge's interpretation of the regulation that was struck down in Sukkar and Bone. The issue in this case is whether the board's and immigration judge's interpretation, construction of two statutory provisions is permissible and thus should be given deference under Chevron. In this case, the immigration judge looked carefully at the two provisions in question. That is, section 236a. You can get back to it in a second, but this may not be fatal to your case. I'm not sure we get Chevron. You may get some lower level of deference. Let's just say it's a one judge, one commissioner out of the BIA and so on. Do you really get Chevron? Well, Your Honor, the board adopted the immigration judge's decision-making. So, you know, under the board's proceedings, there is one judge. Yeah, yeah. And not published? No, Your Honor. No. Yeah, yeah. So, Chevron's overstating it, I think. You may win anyway, but I think Chevron may be more than you get. I'm just saying that this is a permissible interpretation of the statute. Why? Explain. Okay. If we look at what is the purpose and we look at the language of the two statutes involved, which is what the board and immigration judge did, they said conditional parole under Section 236A is nothing – has nothing to do with entry into the United States. It is a release from detention statute – is a detention statute. That is, under 236A, the immigration judge is given the authority to either continue to have the aliens stay in detention or release them with bond or do what in this case happened, conditionally parole them on their own recognizance. Nothing about the language into the United States. They looked at that language and said, well, let's look at the entry statutes, that is, 212 and 245, which do use the same word parole, but only as they are modified by that phrase, that very key phrase, into the United States. And they said that based on that, that they perceive a congressional intent to make parole into the United States a word of art, it is a phrase of art, whereas parole under 236 is merely intended to mean what it means in the common sense, that is, parole from detention. Counsel? Yes, Your Honor. Counsel? You represent the Department of Justice? That's correct, Your Honor. What is the most common use of the parole into the United States these days? What are the most common reasons for people to be paroled in? It's usually what happens in this case. When an alien comes in, is apprehended, and then is needed to, for whatever reason, participate in a proceeding in the United States. I think you misunderstood the question. No. No, I meant the big parole, not conditional parole. Oh, yes, Your Honor. When an alien comes in, and they're not an arriving alien, and they somehow wish to change their status, and they're in the United States already, they are paroled. It's a temporary entry status for whatever it is that they wish to do. Usually it's to change their status, to apply for adjustment of status. It's to, instead of being an unlawful alien, it is to adjust their status to that of a lawful permanent alien. What kind of person are we talking about? Give us a factual scenario. Okay. Say an alien, such as Petitioner, came in in, say, 1999. He is then, he's an alien that wishes to, he's married to a United States citizen, wishes to adjust their status. Because they are caught and apprehended, they're in, you know, they're basically, for some reason, at the border or near the border, and the Border Patrol officers, or the court, if they're in immigration proceedings, has the option of treating them as parolees. That is, allowing them to, it's almost like a fiction. Usually a parolee is somebody that's outside our borders. It's an arriving alien. But once they're inside, we create this fiction that we can parole them in, even though they're inside the United States. Who do we parole in and who do we throw out, to use the vernacular? Well, that's why we have proceedings, removal proceedings. Yeah, but I mean, can you give us a sense of what kind of people are paroled into and what kind of people are thrown out? People who usually can show the good, well, some kind of relationship to a United States citizen, can show a working background, paying their taxes. Individuals that have no crimes of moral turpitude or illegal felonies. Those are the kinds of individuals that are permitted to parole and adjust status. And that happens on a routine basis? You're here illegally, but you're not a bad person. You haven't broken any laws. You have some ties. You're paying your taxes. So we're going to parole you into the United States. And what do you get? A green card? No, you don't get a green card. Yeah. Well, what do you get? You're given an opportunity to apply for adjustment of status. That's what it is. Or asylum. Or, I mean, if they're at the border, if they're an arriving alien and they're paroled into the United States, usually to apply. So somebody who shows up and says, they're torturing me in Nigeria, they can parole somebody like that into the United States. That's correct, Your Honor. You know, usually we don't turn people away if they're at our borders knocking at the door and claiming that they will be persecuted if they are returned. However, if we also look at the purposes of the two statutes involved here, not just the mere language, but the purposes, what the Board of Immigration judges did is they said, well, the purpose of one statute is a detention statute, whereas the other statute is an entry statute. And it's clear from these two purposes that the detention statute has nothing to do with entry, whereas 245A and 212, the two entry statutes, have everything to do with entry. So the immigration judge and the board saw a clear distinction in purposes, and in that way, they were able to perceive the congressional intent in this case. Finally, the last issue that was brought up by Petitioner's counsel, that is whether an alien who's granted parole in the United States and allowed to come in, but then is told that they are not allowed to adjust status, obviously that's been already handled by this Court's decision in Bona. We argued that that was not exhausted, and it wasn't. That particular issue, that is, say, arguendo, that the alien was in fact paroled. Could this alien adjust status? Kagan was paroled in the sense of paroled into the United States. Could this alien adjust status? That particular issue was never brought up, was never addressed by the alien's briefs before the board, so it was never exhausted. And it does not seem to have been the basis for the decision by either the I.I.J. or the board. No. And that's why the only reason we pointed that out is because it was briefed by Petitioner's counsel. Subject to the Court's questions, that concludes my argument. I've only got one point, and again, it's off to one side of this particular case. I'm not an expert in immigration law, although I've tried to learn it. I have to say I find it difficult when there are two parallel ways of referring to statutory sections. The experts seem to like to refer to the statutory section as it was written in the statute. And often without side, OK, by the way, if you're looking forward in the book, here's the codification. I find it very difficult sometimes when you talk, because it's as if you're talking in code to me. I apologize, Your Honor. We typically refer to the Immigration Nationality Act sections. By the section. Yes, I'm well aware of that, and that's what I'm complaining about. Yes, Your Honor. And in the future, I will make sure of it. Well, I'm not sure, but just be aware of the weakness on our side of the bench on this question. I will communicate that to my office and make sure that in the future counsel refer to their U.S. Code sections. OK. Thank you. If I may, Your Honor, I believe I need to clarify what the government's attorney stated. First, the issue of whether the petitioner could adjust status was brought up, but the issue was pre-remitted by the immigration judge at the beginning. He requested briefs on the supplemental briefs on the issue of whether in his type of situation would allow him to adjust status, but then he pre-remitted the issue and stated it doesn't matter whether he's an arriving alien, whether he's a what is called an applicant for admission, it doesn't matter. We're just going to say that 236 does not fall under 245A, period. And that so the issue was not able to be brought in because of the fact that it was pre-remitted, but it was brought up on the appellate to the BIA, and the BIA dismissed the issue also. No, they didn't. What about Lorenzo DeConstanza on May 22 issued a full opinion on this? And he did just ignore the issue. Well, he didn't ignore it. He didn't ignore the issue. He decided it. He stated 236. But he decided the issue. He said one is simply a custody pending removal and the other is a. But what I want to bring back up again is that the government didn't quite explain parole. Parole is, there's two types of parole. Parole is when a person comes in, you can be a permanent resident, and if you have a permit, you can get a deferred inspection. You may be, you can get advanced parole when you still haven't quite gotten your papers done. You can go out of the country and come back through advanced parole. Then there's such things as humanitarian parole, which is for asylees. There's parole for public benefit, which is for asylum seekers. And none of that happened here. What? That didn't happen here. Well, we're saying that here, Your Honor. Counsel, we understand your position. The case just argued is ordered and submitted. Thank you very much. Thank you.
judges: Schroeder, Trott, W. Fletcher